# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CEDAR RAPIDS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. CR06-0139 |
| vs. | REPORT AND RECOMMENDATION |
| JUAN JOSE STEVENS, | |
| Defendant. | |

This matter comes before the court pursuant to the defendant's November 28, 2006, motion to suppress and request for hearing (docket number 24). The court held an evidentiary hearing on December 11, 2006, at which the defendant was present and represented by Michael K. Lahammer. The government was represented by Assistant United States Attorney Patrick Reinert. It is recommended that the motion to suppress be denied.

The defendant in this case contends that a search warrant executed at his residence on October 8, 2006, lacked probable cause. In addition, the defendant contends that information in the warrant affidavit concerning his criminal history was erroneous. The government admits that some of the criminal history information was erroneous. Accordingly, the court held a Franks v. Delaware hearing to determine whether the erroneous inclusion of criminal history information in the affidavit was done intentionally or in reckless disregard for the truth. The court makes the following findings of fact and conclusions of law.

# FINDINGS OF FACT

Cedar Rapids Police Officer Matthew Denlinger has been a police officer for seven years and a narcotics officer since January 2006. He applied for and received a search warrant for the residence at 527-2nd Avenue SW, Apt. A in Cedar Rapids, Iowa, on October 8, 2006. As it pertains to probable cause to search the residence, the affidavit states the following:

> ON 10/08/06 AT APPROXIMATELY 1900 HOURS THIS AFFIANT WAS ADVISED THAT A FEMALE SUBJECT WAS AT THE POLICE DEPARTMENT WANTING TO REPORT DRUG ACTIVITY. SGT. ROBINSON INFORMED ME THAT THE FEMALE WAS A MONICA SANCHEZ AND THAT SHE HAD INFORMATION THAT HER FATHER WAS DEALING COCAINE. I CAME TO THE POLICE DEPARTMENT AND MET WITH SGT. ESTLING. SGT. ESTLING STATED THAT SANCHEZ HAD VOLUNTARILY COME TO THE STATION TO REPORT THAT HER FATHER WAS DEALING COCAINE.
>
> THIS AFFIANT THEN MET WITH MONICA SANCHEZ AND HER HALF BROTHER MICHAEL PAVANO. SANCHEZ GAVE ME A COMPLETE STATEMENT REGARDING WHAT SHE HAD WITNESSED. SEE THAT STATEMENT FOR COMPLETE DETAILS. SANCHEZ STATED THAT HER FATHER'S NAME WAS JUAN STEVENS AND THAT HE LIVED AT 527 2ND AVENUE SOUTHWEST APARTMENT A. SANCHEZ STATED THAT SHE LIVES AT THAT SAME ADDRESS IN APARTMENT B.
>
> SANCHEZ STATED THAT ON 10-07-06 AT 2200 HOURS SHE PERSONALLY OBSERVED HER FATHER SELL A BAG OF COCAINE TO AN UNKNOWN MALE IN FRONT OF 527 2ND AVENUE SOUTHWEST. SANCHEZ STATED THAT HER FATHER ADMITTED TO SELLING COCAINE TO THE MALE. SANCHEZ STATED THAT HER FATHER THEN SHOWED HER APPROXIMATELY FIFTY TO ONE-HUNDRED SMALL BAGS OF COCAINE

SHICH [sic] HE HAD CONCEALED IN A SAFE IN HIS APARTMENT.

THIS AFFIANT ALSO SPOKE WITH MICHAEL PAVANO. PAVANO STATED THAT HE IS NOT RELATED TO JUAN STEVENS AND THAT SANCHEZ IS HIS HALF SISTER. PAVANO ADVISED THAT HE OVERHEARD STEVENS ADMISSION TO SNACHEZ [sic] ABOUT SELLING COCAINE. PAVANO STATED THAT HE DOES NOT LIVE AT THIS ADDRESS AND THAT HE DID NOT PERSONALLY OBSERVE THE COCAINE.

**THIS AFFIANT THEN RAN A CRIMINAL HISTORY OF JUAN STEVENS, DATE OF BIRTH 09-23-60. STEVENS CRIMAL [sic] HISTORY SHOWED A VERY LENGTHY ARREST RECORD THAT INCLUDED SEVEN NARCOTIC RELATED ARRESTS, FIVE ASSAULTS, FOUR OWI'S, THREE IWOA ARRESTS, TWO PROBATION VIOLATIONS, TWO BURGLARIES, ONE ROBERRY [sic] AND POSSESSION OF A SHOTGUN AS A FELON. HE HAS ALSO SERVED PRISON TIME IN BOTH TEXAS AND IOWA FOR THESE OFFENSES.**

THIS AFFIANT CHECKED IOWA DEPARTMENT OF TRANSPORTATION [sic] RECORDS AND FOUND TWO VEHICLES REGISTERED TO JUAN STEVENS OF 527 2ND AVENUE SOUTHWEST APARTMENT A, CEDAR RAPIDS, LINN COUNTY, IOWA. THE FIRST VEHICLE IS A GREEN 1999 FORD EXPEDITION WITH IOWA PLATE 322RXK. THE SECOND VEHICLE IS A TAN 1993 FORD CROVN [sic] VICTORIA WITH IOWA PLATE 658RSZ.

BASED ON THE ABOVE INFORMATION, THIS AFFIANT IS REQUESTING A SEARCH WARRANT BE ISSUED FOR 527 2ND AVENUE SOUTHWEST APARTMENT A, CEDAR RAPIDS, LINN COUNTY, IOWA; ALONG WITH ALL PERSONS KNOWN TO RESIDE AT AND VEHICLES REGISTERED TO ANYONE KNOWN TO RESIDE AT 527 2ND AVENUE SOUTHWEST APARTMENT A, CEDAR RAPIDS, LINN COUNTY, IOWA.
(emphasis not in original).

To prepare the search warrant, Officer Denlinger had a police dispatcher run a criminal history on the defendant. He also checked a local police database of contacts with individuals in Cedar Rapids called ILEADS. The ILEADS database had the defendant's full name and date of birth. When a criminal history is run, the police also look for aliases and possible criminal history under similar names with the same dates of birth or the same name with similar dates of birth.

From the criminal history information that he received (Exhibit 2) and by referring to the ILEADS database, Officer Denlinger set forth the criminal history of the defendant in the third to the last paragraph set forth above. The criminal history section is not only wrong, it cannot be derived from looking at the defendant's criminal history printout alone. Officer Denlinger believes that he must have also been looking at information in the ILEADS database when he prepared the criminal history portion of the affidavit.

The affidavit says that the defendant has seven narcotics-related arrests but the criminal history, Exhibit 2, only shows three arrests.[1] The affidavit shows five assaults, but only three can be found in Exhibit 2. The affidavit says that the defendant has four OWIs but Exhibit 2 only shows three. The affidavit states that he has been charged with possession of a shotgun as a felon but that charge relates to a person named John with a similar last name. Finally, the affidavit says that the defendant served prison time in Texas and Iowa but he has never served prison time in Iowa.

The information used to provide the defendant's criminal history was hastily gathered from a dispatcher late at night. It is very difficult to quickly gather accurate criminal history, especially where it comes from other states. The inclusion of erroneous information was negligent but does not rise to the level of intentional falsehood or reckless disregard for the truth.

---

[1] The parties now agree that the defendant has a criminal history that includes prior felony drug convictions.

4

**CONCLUSIONS OF LAW**

The defendant contends that the search warrant was not supported by probable cause. He further contends that the inclusion of erroneous criminal history information is a violation of Franks v. Delaware, 438 U.S. 154 (1978), which should also cause the evidence gathered pursuant to the warrant to be suppressed.

The government contends that the warrant is supported by probable cause. It further contends that there is no violation of Franks v. Delaware in situations where erroneous information was negligently included in the warrant affidavit. Further, the government contends that the remedy is to excise erroneous information from the affidavit and determine whether probable cause independently exists for the warrant. The court agrees with the government.

Probable Cause

Because the evidence sought to be suppressed was gathered pursuant to a search warrant, the court employs the standard set forth in Illinois v. Gates, 462 U.S. 213 (1983), to determine the existence of probable cause. It is well established that a warrant affidavit must show particular facts and circumstances in support of the existence of probable cause sufficient to allow the issuing judicial officer to make an independent evaluation of the application for a search warrant. The duty of the judicial officer issuing a search warrant is to make a "practical, commonsense decision" whether a reasonable person would have reason to suspect that evidence would be discovered, based on the totality of the circumstances. United States v. Peterson, 867 F.2d 1110, 1113 (8th Cir. 1989). Sufficient information must be presented to the issuing judge to allow that official to determine probable cause; his action cannot be a mere ratification of the bare conclusion of others. Gates, 462 U.S. at 239. However, it is clear that only the probability, and not a prima facie showing, of criminal activity is required to establish probable cause. Id. at 235.

This court does not review the sufficiency of an affidavit de novo. An issuing judge's determination of probable cause should be paid great deference by reviewing

5

courts. Id. at 236. The duty of the reviewing court is simply to ensure that the issuing judge had a substantial basis for concluding that probable cause existed. Id. at 238-39.

Even where probable cause is lacking, the court's inquiry does not end. Pursuant to United States v. Leon, 468 U.S. 897 (1984), in the absence of an allegation that the issuing judge abandoned a neutral and detached role, suppression is appropriate only if the affiant was dishonest or reckless in preparing the affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause. In Leon, the United States Supreme Court noted the strong preference for search warrants and stated that "in a doubtful or marginal case a search under a warrant may be sustainable where without one, it would fall." Leon, 468 U.S. at 914 (internal citations omitted).

> Searches pursuant to a warrant will rarely require any deep inquiry into reasonableness, . . . for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search. . . . Nevertheless, the officer's reliance on the magistrate's probable-cause determination and on the technical sufficiency of the warrant he issues must be objectively reasonable, . . . and it is clear in some circumstances the officer will have no reasonable grounds for believing that the warrant was properly issued.

Id. at 922-23.

Pursuant to Leon, suppression remains an appropriate remedy: (1) where the magistrate issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth, Franks v. Delaware, 438 U.S. 154 (1978); (2) where the issuing magistrate wholly abandons the judicial role and becomes a "rubber stamp" for the government; (3) where the officer relies on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; or (4) where the warrant is so facially deficient in failing to particularize the place to be searched or the things to be seized that the executing officers cannot reasonably presume it to be valid. In Leon, the remedy of suppression was not ordered despite the fact that the affidavit in that case

6

did not establish probable cause to search the residence in question. Further, the information was fatally stale and failed to properly establish the informant's credibility. The standard announced in Leon is an objective standard.

In this case, Officer Denlinger had extremely fresh information concerning the existence of controlled substances at the defendant's residence. It was reported to the police by the defendant's daughter and her half-brother. It is relatively uncommon that family members go to the police under these circumstances. Regardless of whether this is common, the daughter had personally observed her father sell a bag of cocaine to another individual. The defendant showed his daughter a stash of cocaine in a safe in his apartment. The informant's half-brother also overheard the defendant admit to selling cocaine. The affiant was careful to include the fact that the half-brother had not personally observed the cocaine stash or the drug transaction. The care that the affiant took in distinguishing what the defendant's daughter observed from what her half-brother heard shows the affiant's genuine concern for accuracy in this affidavit.

Aside from the criminal history information, the affidavit corroborated the fact that vehicles registered to the defendant were registered at the address to be searched.

Accordingly, this was truly an unusual circumstance requiring prompt attention by the police. The defendant's daughter had informed the police that she had just observed the defendant sell cocaine. The defendant showed her a substantial stash of cocaine in the safe at the apartment. The information was corroborated, in part, by statements from the informant's half-brother and by a public records search. As noted above, the affiant was careful to distinguish what the defendant's daughter was able to observe and that which her half-brother was able to hear. The affiant correctly identified that the defendant had a criminal history involving narcotics but inaccurately described the extent of that criminal

history.² Under the standards set forth above, probable cause existed for the issuance of this warrant.

## Franks v. Delaware

In order to prevail on a challenge to a warrant affidavit pursuant to Franks v. Delaware, 438 U.S. 154 (1978), the challenger must show (1) that a false statement knowingly and intentionally or with reckless disregard for the truth, was included in the affidavit and (2) that the affidavit's remaining content is insufficient to establish probable cause. United States v. Gladney, 48 F.3d 309, 313 (8th Cir. 1995).

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient.

Franks v. Delaware, supra, at 171.

Further, in order to mandate a hearing, the challenged statements in the affidavit must be necessary to a finding of probable cause. United States v. Flagg, 919 F.2d 499 (8th Cir. 1990). United States v. Streeter, 907 F.2d 781, 788 (8th Cir. 1990) (contested material must be "vital" to probable cause). It must also be remembered that although the affidavit must contain statements that are truthful,

---

²While Officer Denlinger cannot recreate how he identified seven narcotics arrests for the defendant, the truth is that the defendant's criminal history is worse than that recorded in the affidavit. The defendant has prior felony drug convictions. While scrupulous accuracy is essential in every search warrant, there is no substantial difference between seven and three prior drug arrests when its function is simply to show that the defendant has a drug-related criminal history.

8

> This does not mean "truthful" in the sense that every fact recited in the warrant affidavit is necessarily correct. For probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that some times must be garnered hastily. But surely it is to be "truthful" in the sense that the information put forth is believed or appropriately accepted by the affiant as true.

Franks v. Delaware, supra, at 165.

The fact that an informant had a criminal record and was cooperating under a plea agreement is not critical to the finding of probable cause. Flagg, supra; United States v. Martin, 866 F.2d 972 (8th Cir. 1989) (omission of fact of informant's drug addiction of no consequence to determination of probable cause). The fact that the police omitted information that an informant had been a drug dealer, was cooperating with the police in order to receive leniency, and was being paid by the police did not warrant relief in United States v. Wold, 979 F.2d 632 (8th Cir. 1992). See also United States v. Reivich, 793 F.2d 957 (8th Cir. 1986). It is not necessary to notify the magistrate of an informant's criminal history if the informant's information is at least partially corroborated. United States v. Parker, supra. Similarly, it was not misleading, as a matter of law, to omit the fact that the informant was the defendant's sister. United States v. Johnson, 925 F.2d 1115 (8th Cir. 1991).

As noted in the Findings of Fact above, Officer Denlinger's erroneous inclusion of criminal history information was negligent. It does not rise to an intentional falsehood or a reckless disregard for the truth. Further, when the erroneous information is excluded from the warrant affidavit, probable cause still clearly exists for the issuance of this warrant. For these reasons, the Franks v. Delaware challenge should fail.

For the reasons discussed above, **IT IS RECOMMENDED**, unless any party files objections[3] to the Report and Recommendation on or before December 20, 2006, that the

---

[3] Any party who objects to this report and recommendation must serve and file
(continued…)

9

defendant's November 28, 2006, motion to suppress evidence (docket number 24) be denied.

December 13, 2006.

_____
JOHN A. JARVEY
Magistrate Judge
UNITED STATES DISTRICT COURT

---

(…continued)
specific, written objections on or before the date in the text of this order. A party objecting to the report and recommendation must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections.